The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson, the briefs and arguments on appeal and the newly submitted depositions. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the entire record of evidence, the Full Commission reverses the Deputy Commissioners holding and enters the following Opinion and Award.
 *********** PROCEDURAL HISTORY
An Opinion and Award was filed in this case on 10 May 1995 by former Deputy Commissioner Jan Pittman. Subsequent thereto, a Full Commission Opinion and Award was filed on 27 February 1996 by Commissioner Laura K. Mavretic, in which the Full Commission found that plaintiff was justified in refusing a position offered by defendants in 1993.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 22 July 1998 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On 1 November 1991, an employment relationship existed between plaintiff-employee and defendant-employer.
3. Cigna Property and Casualty is the carrier on risk.
4. Plaintiffs average weekly wage on 1 November 1991 was $582.35, yielding a compensation rate of $388.25 per week.
5. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
6. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on 1 November 1991.
7. A video depicting the duties of the Production Manager Assistant position is admitted into evidence as Stipulated Exhibit #2.
8. Plaintiffs medical records regarding this claim are admitted into evidence.
9. The parties entered into an Industrial Commission Form 21 Agreement for Compensation on 14 November 1991, which was approved by the Commission 14 April 1992.
10. The issues to be determined are whether plaintiff was justified in the refusal of a job offered by defendant-employer; whether plaintiff is permanently and totally disabled, and; whether plaintiff is entitled to attorneys fees pursuant to G.S. 97-88.1.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 1 November 1991, plaintiff was employed by defendant-employer primarily as an "A operator, but also performing maintenance as an insulator for overtime hours. As of that date, plaintiff had been employed by defendant-employer for approximately seventeen (17) years. At the time of his deposition on 6 January 2000, plaintiff was 64 years old.
2. On 1 November 1991, plaintiff sustained a compensable injury to his back and ribs when the back of the chair he was sitting in came off, causing plaintiff to fall and strike the floor. Plaintiff reported the accident to his supervisor and sought medical treatment.
3. Defendants admitted the compensability of this incident by entering into an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 14 April 1992. Pursuant to this Form 21 Agreement, plaintiff has received ongoing total disability compensation since 1 November 1991.
4. In August 1996, Mr. Charles Jones took over as Plant Manager for defendant-employers Wilmington facility. At the time Mr. Jones took this position, spending at the plant had increased and production had decreased. His immediate goals included improving the plants safety record, environmental program and production. In order to accomplish some of these goals, Mr. Jones created a safety coordinator position in October 1996 and instituted other reorganization efforts at the plant.
5. In October 1997, defendant-employer offered plaintiff the newly created full-time position as a Production Manager Assistant. This position was purportedly created as part of Mr. Jones reorganization efforts. A primary duty of this position required monitoring shipments to insure loading and delivery schedules were complied with, and the entering of production data onto spreadsheets and forwarding the information to management. Also assigned to this new position was the duty of monitoring visitors to insure that they had signed in at the plant and received necessary safety instructions. An additional duty involved the gathering of crew rosters from contractors who performed work projects at the site.
6. Defendant-employer maintains that it was prepared to be flexible regarding needed accommodations for the person performing the Production Manager Assistant position while also maintaining that this job was not created especially for plaintiff. This position was offered to plaintiff at the rate of pay of $10.40 per hour, an amount which was less than his pre-injury wage level. This position would also include the companys full benefits package and be eligible for pay raises in keeping with the performance based pay increase program implemented by defendant-employer for all employees.
7. Plaintiff did not accept defendant-employers offer of this position, although the record is unclear as to exactly what date it was officially offered. The position was not advertised and was still vacant at the time of the hearing on 22 July 1998, despite defendants contention of the need to have it filled. Subsequent thereto, defendants filed a Form 33 Request for Hearing on 9 December 1997 and plaintiff filed a Form 33R on 6 January 1998.
8. Following the filing of Deputy Commissioner Stephensons Opinion and Award on 8 April 1999, plaintiff complied and returned to work for defendant-employer in the Production Manager Assistant position on 3 May 1999.
9. As of 6 January 2000, plaintiff continued to work in this position, but was still not performing a significant portion of the purportedly assigned duties. Plaintiff experienced more idle time during his day than other employees. One of plaintiffs primary duties, entering data on spread sheets, took little time, on some days as little as thirty (30) minutes. Also, there was little work associated with plaintiffs visitor monitoring duties. Plaintiff had so little work to perform in this position that other employees complained that he was getting a "free ride and that he was being paid without having to work.
10. As of 6 January 2000, the date of Mr. Jones deposition, plaintiff was the only employee in the plant who was not participating in defendant-employers performance pay program, even though plaintiff had worked there long enough to be a participant.
11. As a result of his 1 November 1991 injury by accident, plaintiffs permanent restrictions included no frequent lifting of greater than twenty-five to thirty (25-30) pounds, and no significant climbing, squatting or crouching. Plaintiff also sustained a ten percent (10%) permanent partial disability to his ribs, a ten percent (10%) permanent partial disability to his cervical spine and a five percent (5%) permanent partial disability to his lumbar spine as a result of his compensable injury.
12. At the time he returned to work on 3 May 1999, plaintiff was not of the belief that his condition was such that he should return, but he reported nonetheless. At that time, plaintiff felt forced to return to work so that he would not lose his health insurance and so that he could provide some level of support for his family.
13. Following his return to work, plaintiff missed a number of days due to his back condition from 3 May 1999 through 6 January 2000. Plaintiff reported these problems and complaints regarding his back to Mr. Jones. The problems and symptoms plaintiff was experiencing were the same as he had been experienced following his 1 November 1991 injury by accident, but were occurring more frequently because of his work and commute.
14. Plaintiffs commute to and from work required forty-five minutes to an hour of driving time each way, causing him to experience increased pain in his back and neck. Because of the sedating effect of his pain medication, which could lead to unsafe driving, plaintiff was unable to use it regularly during his commutes.
15. After a month of experiencing pain from his work and commutes, plaintiff sought medical treatment from his family physician, Dr. Najib Muradi, who then referred him to Dr. Stephen Grubb, an orthopaedic surgeon.
16. Plaintiff was initially examined by Dr. Grubb on 29 June 1999 with complaints of lower back pain that was radiating into his buttocks and legs. Based upon this evaluation, Dr. Grubb diagnosed plaintiff has having cervical and lumbar degenerative disc disease with possible spinal chord compression. Plaintiff also had significant range of motion limitations in his neck. It should be noted that Dr. Grubb found plaintiffs complaints and symptoms to be consistent with his own objective findings.
17. Plaintiff was next examined by Dr. Grubb on 1 September 1999. At that time, plaintiff was continuing to experience back and neck pain, but was also experiencing pain in his hip. Based upon plaintiffs condition, Dr. Grubb opined that if plaintiff continued his routine of work and commutes that the stress on his spine would be significantly increased and that plaintiffs symptoms would only worsen. Additionally, Dr. Grubb opined that plaintiff was incapable of gainful employment.
18. An employers responsibilities and actions made pursuant to the Americans with Disabilities Act are not necessarily probative evidence regarding the suitability of work offered to an injured employee under the North Carolina Workers Compensation Act.
19. The Full Commission gives more weight to the testimony and opinions of Dr. Grubb regarding plaintiffs physical ability to perform the job in question as opposed to the opinions of Dr. Torres.
20. The Production Manager Assistant position offered to plaintiff by defendant-employer was not suitable given plaintiffs physical condition and restrictions related to his 1 November 1991 injury by accident.
21. The Production Manager Assistant position offered to plaintiff by defendant-employer was not suitable to plaintiffs physical condition and was a make work position, made up of purported, rather than an actual full compliment of duties. There is a lack of evidence that the Production Manager Assistant position is a job readily available in the competitive job market.
22. Plaintiffs initial refusal of the Production Manager Assistant position was reasonable and justified. This job was not suitable and wages earned in a unsuitable make work job are not indicative of wage earnings capacity in the competitive job market. Furthermore, upon receipt of this Opinion and Award, plaintiff is not required to continue working in this unsuitable position.
23. As the result of his 1 November 1991 injury by accident, plaintiff continues to be incapable of earning wages in any suitable employment in the competitive job market. The wages currently being earned by plaintiff in an unsuitable job are not indicative of his wage earning capacity. At this time, further vocational rehabilitation efforts would be futile.
24. Defendants actions and positions in this matter were reasonable and not based upon unfounded litigiousness.
 ***********
Based upon the foregoing findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 1 November 1991. G.S. 97-2(6).
2. The Production Manager Assistant position offered to plaintiff by defendants was not suitable given his physical condition and restrictions. Also, this newly created job was a make work position for which there is a lack of evidence of its availability in the competitive job market. G.S. 97-32; Peoples v. Cone Mills Corp., 316 N.C. 426,342 S.E.2d 798 (1986). Plaintiffs initial refusal of this job was reasonable and justified. Id.
3. Pursuant to the Form 21 Agreement, which was approved by the Commission on 14 April 1992, plaintiff is entitled to a rebuttable presumption of continued total disability. G.S. 97-29; Kisiah v. W.R.Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. rev.denied, 345 N.C. 343, 483 S.E.2d 169 (1997). Because the job offered to plaintiff was unsuitable and his refusal of it justified, defendants have failed to rebut the presumption of continued disability. Id.
4. As the result of his 1 November 1991 injury by accident and presumption of total disability plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $388.25 per week from 3 May 1999 and continuing thereafter until further order of the Commission. G.S. 97-29. Defendants are entitled to a credit for "wages paid to plaintiff which have been found to be not indicative of his wage earnings capacity. G.S. 97-42. At this time, further vocational rehabilitation efforts would be futile.
5. As the result of his 1 November 1991 injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred. G.S. 97-25.
6. As defendants actions in this matter were reasonable and not based upon unfounded litigiousness, plaintiff is not entitled to attorneys fees pursuant to G.S. 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $388.25 per week from 3 May 1999 and continuing thereafter until further order of the Commission. At this time, further vocational rehabilitation efforts would be futile. Defendants are entitled to a credit for "wages paid to plaintiff which have been found to be not indicative of his wage earnings capacity. Once the credit is deducted, from the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his 1 November 1991 injury by accident.
3. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. From the compensation which has accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER